787 F.2d 593
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
vs.
FRANK STELLA, Defendant-Third Party Plaintiff-Appellant,
STEVEN LACKOMAR, Third Party Defendant.
 84-1807
 United States Court of Appeals, Sixth Circuit.
 3/3/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: KENNEDY and CONTIE, Circuit Judges; and GIBSON, District Judge.*
 PER CURIAM.
 
 
 1
 Frank Stella appeals from the district court's grant of summary judgment in favor of the United States under the Michigan third party beneficiary statute, Mich. Comp. Laws Ann. Sec. 600.1405. The decision held Stella liable to pay Steven Lackomar's tax liability of $34,538.73 which Stella allegedly assumed pursuant to a contract.
 
 I.
 
 2
 Frank Stella entered into an agreement with Steven Lackomar and Ben Maniaci on August 12, 1977. Stella, on behalf of a corporation which did not yet exist, agreed to purchase all the shares of a Michigan corporation, Interlude I, Inc., or 'Interlude Lounge,' from Lackomar and Maniaci, the sole shareholders. This agreement was set out in the 'Agreement to Purchase Stock' (Agreement). Interlude, which was then in Chapter Eleven proceedings, owned one or more liquor licenses. The Agreement provided that the stock would be transferred immediately to Stella's attorney to be held by the attorney pending approval of the transfer of the liquor licenses by the Michigan Liquor Control Commission (MLCC). The Agreement further provided that when the stock was transferred 'free and clear' to Stella, Stella would assume 'Steven Lackomar's personal tax liability in Steven Lackomar Enterprises, Ltd., . . . not to exceed $50,000.00 . . ..'
 
 
 3
 On the same day, the parties entered into another agreement entitled 'Rider to Agreement to Purchase Stock' (Rider). The Rider agreement required Stella to personally assume some obligations since the Agreement was signed by Stella only as a representative for a yet to be formed corporation. The Rider provided, as did the Agreement, that Lackomar and Maniaci would work to obtain approval of the liquor license transfer from the MLCC, and that as further consideration of the stock transfer 'free and clear,' Stella would personally assume an obligation to pay Steven Lackomar's tax liability, not to exceed $50,000.
 
 
 4
 On December 19, 1977 and January 6, 1978, Steven Lackomar was notified of the IRS's tax assessment for failing to pay $41,281.20 in withholding taxes for employees of Steven Lackomar Enterprises, Ltd. On January 23, 1979, a 'Notice of Levy,' directed to Frank Stella, was delivered to the finance manager of F. D. Stella Products Company. This notice stated that Lackomar owed the United States funds by virtue of two tax assessments (but only the December 19, 1977 assessment is at issue here), and had failed to pay the amount due. It further stated that if Stella was obligated to Lackomar, he must pay the amount necessary to satisfy the tax liability. A 'Final Demand,' directed to Frank Stella, was delivered on February 7, 1979 to the office manager of the F. D. Stella Products Company. Frank Stella was not personally served with these notices, but received actual knowledge of them.
 
 
 5
 Stella's attorney sent a letter dated February 12, 1979 to Revenue Officer John Fisher concerning the levy notices. This letter stated that neither the F. D. Stella Products Company nor Frank Stella were presently liable for Lackomar's failure to pay taxes, but that 'we do have an obligation pending transfers of certain liquor licenses . . . and that this liability is predicated upon an agreement between Messrs. Lackomar, et al., and the F. D. Stella Company. . . . [A]s soon as the accounting is complete we will make the appropriate payments, if any, to the Internal Revenue Service.' The liquor licenses referred to in the letter were transferred on or about July 25, 1979.
 
 
 6
 About one year after the liquor licenses were transferred, Stella, Lackomar and Maniaci executed a document which was intended to serve as a satisfaction of their previous obligations. This was entitled 'Acknowledgement of Satisfaction of Agreement to Purchase Stock and Rider to Agreement to Purchase Stock of August 12, 1977.' This document stipulated that:
 
 
 7
 The parties acknowledge that the provision for payments of the personal tax liability a sum not to exceed $50,000.00 has been waived and settled for the sum of $15,461.27.
 
 
 8
 Stella gave a check to Lackomar for $15,461.27 which Lackomar endorsed over to the IRS on July 30, 1980.
 
 
 9
 Over another year later, on November 18, 1981, the United States instituted this action against Frank Stella seeking to collect the remainder of the money owed by Lackomar, $15,852.35 plus interest. The United States argued that it had a right to these funds by virtue of its tax levy, 26 U.S.C. Sec. 6332(c)(1) (Count I), and by its status as a third party beneficiary to a contract, Mich. Comp. Laws Ann. Sec. 600.1405 (Count II). In response, Stella argued that since Stella was not personally served with the notice of levy, service was defective. With respect to Count II, Stella asserted that any rights the United States had under the contract had been satisfied by the $15,461.27 settlement payment.
 
 
 10
 The United States moved for summary judgment on both counts and Stella moved for summary judgment as to Count I on his defective service of process theory. The district court, in an opinion dated September 11, 1984, did not award summary judgment to either party as to Count I, but ruled for the United States with respect to Count II. The district court reasoned that the service of the notice of levy was appropriate. However, since there was a question of fact as to whether the parties intended the liquor license transfer to be a condition precedent to Stella's assuming Lackomar's tax liability, summary judgment would be inappropriate as to Count I because a 'levy applies only to 'property possessed and obligations existing at the time thereof." District Court's Opinion at 11 (quoting 26 U.S.C. Sec. 6331(b)).
 
 
 11
 As to the third party beneficiary claim, the district court reasoned that under Mich. Comp. Laws Ann. Sec. 600.1405(2)(c) the parties to a contract may not divest a third party beneficiary of rights after the third party has taken 'any legal steps to enforce said promise made for his benefit.' Section 600.1405(e)(c). The court concluded that the government's tax levy and its notice of levy constituted a 'legal step' within the meaning of the statute. Since the defendant conceded that the liquor licenses were eventually transferred, the agreement's alleged condition precedent was satisfied. The court, therefore, held Stella was unable to modify his agreement with Lackomar and Maniaci since the government, as third party beneficiary, had instituted a legal step. It was deemed insignificant that the liquor licenses had not been transferred prior to the notice of levy. On October 29, 1984, the court granted judgment in favor of the United States for the sum of $34,538.73.
 
 II.
 
 12
 For a grant of summary judgment to be proper under Fed. R. Civ. P. 56(c), there must be no genuine issue of material fact when viewing the evidence in the light most favorable to the opposing party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979).
 
 
 13
 On appeal, Stella first argues that the contract was modified by the parties as a result of nonperformance, and that this compromise was executed before a legal step was taken by the United States. Next, Stella argues that the contract was never fully performed because the condition precedent of transferring the stock 'free and clear' was never satisfied. As a result, Stella concludes that the government was not a third party beneficiary and the contract therefore could be modified between the two parties without being encumbered by the rights of a third party.
 
 
 14
 After a careful review of the relevant statutes and case law, we conclude that summary judgment in favor of the United States was appropriate for the reasons set forth by the district court. The stock was transferred 'free and clear' once the liquor licenses were transferred. Since a levy is a means by which the government enforces its statutory right to collect taxes, 26 U.S.C. Sec. 6331, it constitutes a 'legal step' under the Michigan third party beneficiary statute, Mich. Comp. Laws Ann. Sec. 600.1405(2)(c). Therefore, the parties to the contract could not divest the United States of its rights under the contract.
 
 
 15
 The order of the district court is accordingly AFFIRMED.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation